UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS ESCOBAR, CARLOS EDUARDO ROMERO OSPINA, JORGE ANIBAL GARCIA, CARLOS CASTILLO, JAVIER PAREDES, OLIVER HERNANDEZ, RAPHIL PEREZ, MARCOS SANCHEZ and VINCENTE DIONICIO, on behalf of themselves and all others similarly situated,

    Plaintiffs,

 v.

MOTORINO EAST VILLAGE, INC. (d/b/a Pizzeria Motorino), and DIMITRI VLAHAKIS,

    Defendants.

Index No.: 14-cv-6760 (KPF)

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY CERTIFICATION AND DISSEMINATION OF COURT AUTHORIZED NOTICE

**McLAUGHLIN & STERN, LLP**

Brett R. Gallaway
Ralph R. Hochberg
260 Madison Ave.
New York, NY 10016
(212) 448-1100

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i-ii

PRELIMINARY STATEMENT ............................................................................................. 1

PROCEDURAL HISTORY ..................................................................................................... 2

STATEMENT OF FACTS ....................................................................................................... 3

ARGUMENT ............................................................................................................................ 6

    I.    Standard of Review ................................................................................................ 6

    II.    Plaintiffs Have Failed To Make The "Modest Factual Showing" Required For Certification Of A Conditional Collective Action And Authorization Of A Class Notice Under The FLSA ........................................................................... 8

CONCLUSION ....................................................................................................................... 12

## TABLE OF AUTHORITIES

### CASES

*Amendola v. Bristol-Myers Squibb Co.*,
    558 F. Supp. 2d 459 (S.D.N.Y. 2008)................................................................................ 9

*Davis v. Abercrombie & Fitch Co.*,
    2008 WL 4702840 (S.D.N.Y. Oct. 23, 2008) ..................................................................... 7

*Flores v. Osaka Health SPA, Inc.*,
    2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) ..................................................................... 7

*Gordon v. Kaleida Health*,
    2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) ................................................................ 12

*Guan Ming Lin v. Benihana New York Corp.*,
    755 F. Supp. 2d 504 (S.D.N.Y. 2010)............................................................................... 10

*Indergit v. Rite Aid Corp.*,
    2010 WL 2465488 (S.D.N.Y. June 16, 2010) ................................................................... 7

*Jimenez v. Lakeside Pic-N-Pac, L.L.C.*,
    2007 WL 4454295 (W.D. Mich. Dec. 14, 2007) ............................................................. 10

*Khan v. Airport Mgmnt. Servs., LLC*,
    2011 WL 5597371 (S.D.N.Y. Nov.16, 2011) ................................................................ 7-8

*Lynch v. United Servs. Auto Assn'n*,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007).............................................................................. 7

*Morales v. Plantworks, Inc.*,
    2006 WL 278154 (S.D.N.Y. Feb. 2, 2006)........................................................................ 7

*Prizmic v. Armour, Inc.*,
    2006 WL 1662614 (E.D.N.Y. June 12, 2006) ................................................................... 7

*Yu G. Ke v. Saigon Grill, Inc.*,
    595 F.Supp.2d 240 (S.D.N.Y. 2008).............................................................................. 11

### STATUTES

29 U.S.C. § 216(b) ................................................................................................................ 1, 6, 7

N.Y. Lab. Law §195(1) *et seq.*.................................................................................................... 2

N.Y. Lab. Law §195(3) .......................................................................................................... 2

**RULES**

29 C.F.R. § 531.35 ............................................................................................................... 10

N.Y. Comp. Codes R. & Regs. tit. 12, § 137–2.5(b) ........................................................... 11

Defendants Motorino East Village, Inc. ("Motorino") and Dimitri Vlahakis ("Vlahakis") (collectively as "Defendants"), respectfully submit this Memorandum of Law in opposition to Plaintiffs' motion for: (a) preliminary certification of Plaintiffs' Fair Labor Standards Act ("FLSA") claims pursuant to 29 U.S.C. §216(b); discovery of the names, addresses and telephone numbers of potential collective action class members; and (c) approval of Plaintiffs' proposed notice and method of dissemination (the "Motion").

## PRELIMINARY STATEMENT

This action was commenced by Plaintiffs and their counsel without proper investigation into the facts. The testimony to date and pro forma conclusory declarations submitted by several Plaintiffs in conjunction with Plaintiffs' motion are replete with inaccurate statements and inconsistencies. Three of the named Plaintiffs use false or fictitious names.[1] Despite those blatant red flags, Plaintiffs' now seek to expand the scope of this litigation by conditionally certifying a class of all current and former hourly employees employed by Motorino from August 20, 2011 to the present. There is absolutely no basis for doing so as Plaintiffs failed to make the factual showing required before a collective action may be conditionally certified.

Plaintiffs claim that (1) Defendants required them to work in excess of 40 hours per week for less than the required minimum wage and overtime pay (Complaint ("Compl.") at 266; (2) Defendants reduced Plaintiffs' pay and that of similarly situated workers by a tip credit, which

---

[1] On March 6, 2015 the Court dismissed with prejudice the claims of Braulio Hernandez Velasquez and on March 27, 2015 the Court granted the withdrawal of Plaintiffs' counsel for Oliver Hernandez and allowed Oliver Hernandez to proceed *pro se* until April 27, 2015, at which point if Mr. Hernandez does not submit written communication to the Court, he will be withdrawn with prejudice as well. *See* Dkt. Nos. 18 and 26. Those dismissals and withdrawals result from those Plaintiffs' failure to appear for depositions. Specifically, Braulio Hernandez Velazquez was scheduled to and failed to appear for deposition on February 19, 2015 and February 24, 2015 and Marcos Sanchez (which is not his real name, *see infra*) failed to appear for his deposition on February 16, 2015. *See* Gallaway Decl. ¶ 5.

was purportedly improper as Plaintiffs spent more than 20% of their time engaged in non-tipped duties; (3) Defendants made improper deductions from Plaintiffs' tips (Compl. At 275-279); (4) Defendants maintained a policy of requiring employees to purchase "tools of the trade" to perform their job at the employees' own expense (Compl. At 269); (5) Defendants failed to post notices at the workplace informing employees of applicable federal and state wage and hour laws (Compl. At 281); and (6) Defendants failed to provide Plaintiffs and other employees with proper wage statements pursuant to New York Labor Law ("NYLL") §195(3).[2] Compl. At 282. However, the discovery that has occurred to date clearly demonstrates otherwise. Plaintiffs do not meet their burden to establish that they are "similarly situated" to those they seek to represent. Moreover, the proposed collective action would be grossly unmanageable, with each employee issue requiring individual analysis under the FLSA. For those reasons, Plaintiffs' motion must be denied.

## PROCEDURAL HISTORY

On August 20, 2014, Plaintiffs filed a purported collective action complaint.[3] Dkt. No. 1. Approximately four months thereafter, they filed this motion for collective certification. *See* Dkt. No. 13. Since the filing of Plaintiffs' motion to collectively certify the class, discovery has been conducted. Both sides have exchanged documents (the large bulk of which came from Defendants who have produced 926 responsive documents to date compared to 21 documents

---

[2] Plaintiffs also inaccurately alleged the Defendants failed to provided Plaintiffs with proper pay rate acknowledgement forms pursuant to NYLL §195(1) but subsequently moved to dismiss this allegation when Defendants provided the executed NYLL §195(1) forms in question. The Court dismissed this allegation on March 6, 2015. *See* Compl. At 283; Dkt. No. 19.

[3] Plaintiffs' Complaint includes allegations under NYLL. Plaintiffs' Motion and Defendant's Opposition focus solely on Plaintiffs' collective action allegations under the FLSA.

produced by Plaintiffs),[4] Defendants responded to interrogatories propounded upon Defendants and Defendants conducted the deposition of 4 named plaintiffs and 1 opt-in.[5] Furthermore, the parties' fact discovery cutoff date in this case, April 10, 2015, which means that all discovery opportunities other than expert discovery will close in mere days. Dkt. No. 8.

## STATEMENT OF FACTS

Defendant owns and operates a small pizza restaurant located at 349 East, 12th Street, New York, NY 10003 under the trade name, "Motorino." Plaintiffs are former employees of Motorino and were employed as deliverymen during the relevant period.[6]

Plaintiffs allege in their Complaint, among other things, that they were not properly compensated for all hours and overtime worked, and that Defendants improperly deducted a percentage of their tips and paid them at the tipped-employee rate when they should have been paid at the non-tipped employee rate. In support of those allegations, Plaintiffs submitted 4 pro forma conclusory declarations, which are all nearly identical, in connection with their Motion.[7] These declarations were submitted and signed in English. Not one of the declarants deposed to

---

[4] Three named Plaintiffs testified that they maintained relevant records but that they either disappeared or were "thrown away" shortly before the commencement of this action. *See* Depo Tr. of Jorge Anibal Garcia Mejia ["Mejia Dep."] 12:21-23; 86:18-88:22; Escobar Dep. 23:12-24:9, 28:2-31:8; Ramirez Dep. 52:16-54:19. Throughout this opposition, deposition transcripts are referred to as "[Deponents' last name] Dep." The condensed transcripts are attached as exhibits to the supporting declaration of Brett Gallaway, Esq.

[5] Additional depositions were scheduled to occur, however the Plaintiffs failed to appear on their scheduled dates and times. *See* FN. 1, *supra*.

[6] Oliver Hernandez is the only Plaintiff who is a current employee and has become unresponsive to Plaintiffs' counsel and appears to have abandoned his claims in connection with this action. *See* FN. 1, *supra*.

[7] Plaintiffs originally submitted 5 declarations in support of their Motion but one of the declarants, Brualio Hernandez Velazquez has since been withdrawn with prejudice from the litigation. *See* FN. 1, *supra*.

date speaks English and all (except 1 opt-in deponent, Helmi Sudrajat) have required a Spanish translator during their depositions. All deponents have given conflicting testimony to both the facts contained in their declarations and the allegations made in the lawsuit. *See infra*. The majority of the deponents testified that they retained records of the time and tips they allegedly were owed, but those records were somehow lost or destroyed immediately preceding the filing of this lawsuit. *See* Mejia Dep. 12:21-23; 86:18-88:22; Escobar Dep. 23:12-24:9, 28:2-31:8; Ramirez Dep. 52:16-54:19.  Finally, 3 of the 5 deponents testified that they were never asked to, nor did they look for any documents responsive to Defendants' discovery requests. Escobar Dep. 96:19-25; Ramirez Dep. 53:7-54:19, 76:22-24; Dionicio 61:13-62:14.

Motorino utilizes an electronic time keeping system to record all hours worked by hourly employees. Gallaway Decl. Ex. A, ¶ 10. When employees arrive at work they clock-in, and when they leave work, they clock-out. *Id*. Contrary to Plaintiffs' Complaint and pro forma declarations, Delivery employees at Motorino do not perform off-the-clock work before they clock in and/or after they clock out. *Id.*; Sudrajat Dep. 59:3-60:21;Ramirez Dep. 78:25-79:19. Employees are paid on a weekly basis based on hours recorded in the electronic system together with cash and credit card tips they receive for making deliveries. Gallaway Decl. Ex. A, ¶ 10.

In or around the middle of 2012, Motorino adopted a policy of deducting 5% of tips received from internet orders which were charged on a credit card. Sudrajat 52:21-59:2; Gallaway Decl. Ex. A, ¶ 5.  Those tips are shared with other tipped Motorino employees who wait on tables and bring the orders to the delivery employees. *Id.*. Prior to mid-2012, all delivery employees received 100% of all credit card tips. *Id.*; Sudrajat Dep. 52:21-59:2. Regardless of the post-2012 5% internet tip deduction, a careful and detailed analysis of punch records and payroll data for all named plaintiffs shows that there was <u>never</u> 1 week during their employment when

any Plaintiff received less than the proper federal or New York minimum wage. *See* Gallaway Decl. Ex. B. In fact, during the vast majority of Plaintiffs employment, they all earned an hourly rate that was well in excess of minimum wage. *See Id*. The 5% internet order deduction was also substantially less than the internet and credit card charges incurred by Motorino for each online order.[8]

During his deposition, opt-in Plaintiff Helmi Sudrajat admitted that prior to the middle of 2012, which encompasses nearly half of the entire class time frame, all delivery employees, including himself, were properly compensated for all time worked and tips received.[9] Sudrajat Dep. 54:23-59:2. Records clearly prove that at least Mr. Sudrajat did not work any overtime while employed as a delivery man at Motorino. *See* Gallaway Decl. Ex. B. Another Plaintiff, Vincente Dionicio, testified that he never had or has a problem with the way Motorino paid delivery men tips that were charged via credit card. Dionicio Dep. 32:3-32:17.

At all relevant times, Defendants prominently displayed and posted required FLSA and NYLL information in their restaurant. Sudrajat Dep. 14:6-21. Defendants never "required" employees to purchase bicycles to perform their job duties and virtually all Plaintiffs owned a bicycle prior to the commencement of their employment at Motorino which they used to perform deliveries at previous similar jobs. Ramirez Dep. 66:24-69:4; Mejia Dep. 28:7-35:13; Dionicio

---

[8] Seamless Web charges Motorino approximately 14% of each order made using their website and credit card companies charge Motorino approximately 3% to use their services. Gallaway Decl. Ex. A, ¶ 6.

[9] All Plaintiffs consistently testified that they each retained all their cash tips. Opt-in plaintiff Sudrajat testified with clarity that with his experience and knowledge as to himself and all other delivery employees, the cash tips he received were approximately equal to the amount of tips he received from credit card and Seamless Web orders. Sudrajat Dep. 21:6-22:11, 27:16-28:7; *see also* Dionicio Dep. 31:17-32:5; Mejia Dep. 17:7-24; Escobar Dep. 42:24-43:5; Ramirez Dep. 55:18-56:8.

Dep. 32:18-42:15; Escobar Dep. 11:21-13:15.  Contrary to the boilerplate assertions in Plaintiffs' Complaint, Plaintiffs had access to and signed weekly wage statements in accordance with NYLL §195(3) (written in both English and Spanish) stating their hours, tips and pay and acknowledged that they had been paid in full. *See* Gallaway Decl. Ex. C.

Three Plaintiffs testified during their deposition that they never saw a copy of the Complaint nor did they meet or speak with their attorneys before August 20, 2014 – the date this action commenced. Ramirez Dep. 23:4-24:2, 29:15-30:24; Escobar Dep. 83:23-84:9; Dionicio Dep. 52:19-55:23. Plaintiffs Marcos Sanchez and Carlos Escobar signed retainer agreements with Plaintiffs' counsel under different names than those used on the Complaint. *See* Gallaway Decl. Ex. D.  When confronted by this troubling fact at deposition, Plaintiffs' counsel, Shawn Clark admitted, "…I am not sure how that came to be. I didn't write the complaint, it was actually a partner in the firm, Mr. Faillace." Ramirez Dep. 43:20-24. This is not the first time this issue has come up in this litigation or been raised with the Court. *See* Dkt. No. 16.

On February 20, 2015 during the deposition of Marcos Sanchez (AKA Rudy Ismael Rojas Ramirez) Defendants' counsel requested copies of all Plaintiffs' retainer agreements. Plaintiffs' counsel did not produce these agreements until March 23, 2015 and once produced, the purported dates on which some of the agreements were signed directly contradicted the Plaintiffs' deposition testimony by approximately 6 months. *Compare* Gallaway Decl. E to Dionicio Dep. 55:4-55:22.

## ARGUMENT

I. **Standard Of Review**

§216(b) of the FLSA authorizes the Court to conditionally certify a class of plaintiffs and permit the mailing of court-authorized notice to potential opt-in plaintiffs when

8

representative plaintiffs have demonstrated that they are similarly situated to the potential opt-in plaintiffs. *See Indergit v. Rite Aid Corp.*, 2010 WL 2465488, at *1 (S.D.N.Y. June 16, 2010); *Lynch* v. *United Servs. Auto Assn 'n,* 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). In order to satisfy the "similarly situated" standard, a representative plaintiff must make a "'modest factual showing' that [plaintiff] and the other putative collective action members 'were victims of a common policy that violated the law."' *Indergit,* 2010 WL at *3 (internal citations omitted); *Flores v. Osaka Health SPA, Inc.*, 2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) (denying plaintiffs motion for conditional certification of a class for failing to make a "modest showing" that she and the potential opt-in plaintiffs were victims of a common policy); *Morales v. Plantworks, Inc.*, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006).

This requirement will only be met when the named plaintiffs have set forth factual allegations, not conclusory or uncorroborated allegations, demonstrating a nexus between their grievances and those of the potential opt-in plaintiffs with respect to their employer's purported violation of the FLSA. *See Id.; see also, Davis v. Abercrombie & Fitch Co.*, 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 23, 2008) (stating that the named plaintiff has made a "modest factual showing" when the plaintiff has offered substantial allegations of a factual nexus between plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation. (internal citations omitted).

Although only a modest showing is required of a plaintiff seeking leave to proceed pursuant to Section 216(b), "[a] plaintiff must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated .... Absent such a showing, an employer may be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *Prizmic v. Armour, Inc.,* 2006 WL 1662614, at *2 (E.D.N.Y. June 12,

2006) (internal quotations omitted); *see also Khan v. Airport Mgmnt. Servs., LLC,* 2011 WL 5597371, at *5 (S.D.N.Y. Nov.16, 2011) (noting that, "[w]hile plaintiff's burden at this stage is modest, it is not non-existent").

II. **Plaintiffs Have Failed To Make The "Modest Factual Showing" Required For Certification Of A Conditional Collective Action And Authorization Of A Class Notice Under The FLSA.**

Here, Plaintiffs have failed to meet the "modest factual showing" standard required by Courts in this Circuit. When deposed, opt-in Helmi Sudrajat stated numerous times that while he was employed by Motorino, all employees were properly compensated for all time spent working and tips received prior to the middle of 2012.

> Q: Do you think under all of the complaints you made here, those complaints just exist after the middle of 2012? Meaning that you were properly compensated for everything prior to the middle of 2012; is that right?
> [ ]
> A: Yes.
> Q: You think that is the same case for other employees too –
> A: Yes.
> Q: -- that worked for Motorino?
> A: Yes
>
> Sudrajat Dep. 58:12-59:2; *see also* 52:21-57:24.

Furthermore, Plaintiff Vincente Dionicio testified that he never had any issues with the way delivery employees were paid their tips from order made using the internet or credit cards.

> Q: What was your issue, if you have one, with the tips that were paid via credit card?
> A: They kept the records for the week and at the end of the week they paid us.
> Q: I'll ask my question again. What was your problem, if you had one, with the way that the tips were paid to you by credit card?
> A: I didn't have no problem.
> Q: You were paid appropriately on your tips for all credit card orders?
> []
> A: Yes.
>
> Dionicio Dec. 32:6-17

10

This is directly contradictory to the nearly identical form declarations that were submitted in support of Plaintiffs' motion. Furthermore, there is no common policy or practice at Motorino to underpay hourly paid deliverymen because hourly paid deliverymen are <u>not</u> underpaid. Exhibit B to the Gallaway Decl. shows each Plaintiffs' weekly hourly rate inclusive of what they received in credit card tips – in actuality, the weekly hourly rate is much higher since employees keep all cash tips and do not report cash tips to Motorino. *See* Sudrajat Dep. 21:6-22:11, 27:16-28:7; Dionicio Dep. 31:17-32:5; Mejia Dep. 17:7-24; Escobar Dep. 42:24-43:5; and Ramirez Dep. 55:18-56:8 These calculations are based on detailed time records of the hours worked and the amount of tips received. Throughout all Plaintiffs' employment, not one of them was paid at an average hourly rate below the federal and New York State set minimum wage for tipped employees. *See* Gallaway Decl. Ex. B. Furthermore, Plaintiffs' unfounded and conclusory assertions that they spend more than 20% of their workday performing non-tipped work such as cleaning the basement, receiving firewood deliveries, taking out the garbage and folding pizza boxes is woefully exaggerated. *See* Gallaway Decl. Ex. A, ¶ 8. In reality, the amount of time that any delivery employee spends on non-tipped work is <u>never</u> more than 15-25 minutes per day which makes up only 3-6% of the delivery employees' shift. *Id*.

  Also, contrary to Plaintiffs assertions, courts may consider the merits of the underlying claim on a motion for conditional certification under the FLSA. *See Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) ("Where a plaintiff fails to carry this [evidentiary burden of establishing he is similarly situated to the other proposed members of the putative collective action] or where a defendant employer shows... that it will likely succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation, a

court may refuse to authorize notice or postpone the issue pending further discovery and motion practice."). Although it is not the Court's role to decide the cases on the merits at this point, the Court has a responsibility to assure that there is some factual basis for Plaintiffs' claims of class-wide violations of the law before authorizing notice to any putative class. *Jimenez v. Lakeside Pic-N-Pac,* L.L.C. 2007 WL 4454295, at *3 (W.D. Mich. Dec. 14, 2007). Here, based on Defendants' meticulous payroll and time records and Plaintiffs' complete lack thereof (and suspicious pre-litigation destruction of records)[10] no such factual basis exists and, consequently, Plaintiffs motion should be denied in its entirety.

As for Plaintiffs' allegation that Defendants required employees to purchase "tools of the trade," courts are hesitant to certify collective claims because of the variation in maintenance and use of delivery vehicles by and amongst proposed class members. In *Guan Ming Lin v. Benihana Nat'L Corp.*, 755 F. Supp. 2d 504 (S.D.N.Y. 2010), the court refused to certify a collective class of deliverymen who were required to purchase and maintain their bicycles. The court stated that "it is highly unlikely that such expenses would be uniform throughout the proposed plaintiff class; the plaintiffs themselves admit that they drove different types of vehicles that would almost certainly have required very different levels of maintenance…[and] [a]s a result of these inconsistencies, it would be inappropriate to speculate as to the expenses and resulting wage calculations of other employees" *Id* at 512-513. Deposition testimony and Plaintiffs own declarations reveal that all of them possessed different types of bicycles and many were purchased or owned prior to the commencement of their employment at Motorino. Ramirez Dep. 66:24-69:4; Mejia Dep. 28:7-35:13; Dionicio Dep. 32:18-42:15; Escobar Dep. 11:21-13:15.

---

[10] *See* Mejia Dep. 12:21-23; 86:18-88:22; Escobar Dep. 23:12-24:9, 28:2-31:8; Ramirez Dep. 52:16-54:19.

Furthermore, the rules governing tools of the trade are similar to the rules governing uniforms: employers can require employees to bear the costs of acquiring and maintaining tools of the trade so long as those costs, when deducted from the employees' weekly wages, do not reduce their wage to below the required minimum. 29 C.F.R. § 531.35 ("[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the [FLSA]."); N.Y. Comp. Codes R. & Regs. tit. 12, § 137–2.5(b) ("The minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by his employer."); *see also Yu G. Ke,* 595 F.Supp.2d at 258 ("[I]n measuring wages we take into account the costs that plaintiff [ ] [delivery persons] incurred in purchasing bicycles **after** they were hired and in repairing them during their employment by defendants.") (emphasis added).

Plaintiffs' declarations are wholly conclusory in this regard and do not specify any particular workweek in which the cost to purchase and/or maintain a bicycle made their wages dip below the federal or New York state minimum. Plaintiffs' theories of recovery, and the amount of recovery, if any, would vary significantly from plaintiff to plaintiff depending on the type of bicycle they used to make deliveries. Therefore, for this additional reason, Plaintiffs' motion to for collective action certification and notice of Plaintiffs' tools of the trade claim should be denied.

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion in its entirety, and grant Defendants such other and further relief as the Court deems just and proper.[11]

Dated: New York, NY
April 6, 2015

                                          Respectfully submitted,

                                          _____s/_____

                                          Brett R. Gallaway
                                          Ralph R. Hochberg
                                          McLAUGHLIN & STERN, LLP
                                          260 Madison Ave.
                                          New York, NY 10016
                                          (212) 448-1100

                                          *Attorneys for Defendants*

---

[11] Defendants submit that a collective action should not be conditionally certified and notice should not be authorized as Plaintiffs have failed to meet this Circuit's standard for conditional certification of a collective action of their FLSA claims. However, should this Court conditionally certify a collective action, Defendants respectfully request that they be permitted to promptly submit a counter-proposed notice and consent to sue form for the Court's consideration. Plaintiffs' request for the Court to authorize the positing of the proposed notice "in a conspicuous location at Pizzeria Motorino" is also improper. Plaintiffs' Br. at 10. The delivery persons constitute a relatively small percentage of the employees at Motorino. Posting a notice that could then be viewed by all employees would be unnecessarily and needlessly disruptive to Motorino's business. It would also only reach current delivery staff, not former delivery staff. Additionally, mailing of any Court-approved notices via first-class mail has been found to be the best and most reliable form of notice practicable – there is no need, absent a showing that distribution via mail is inadequate, to notify all class members via text message. *See Gordon v. Kaleida Health*, 2009 WL 3334784, at *9 (W.D.N.Y. Oct. 14, 2009). Furthermore, Defendants do not possess all current and former deliverymen's cellular telephone numbers which would make this improper request impossible to implement.